# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

EUGENE BLAKE,

        Petitioner,

v.                                              Civil Action No. 5:08cv10
                                              (Judge Stamp)

DAVID BALLARD, Warden,

        Respondent.


## OPINION/REPORT AND RECOMMENDATION

### I.   Procedural History

**A.  Petitioners' Federal Habeas Proceedings**

On January 11, 2008, the *pro se* petitioner filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Petitioner paid the required filing fee on February 6, 2008. On February 7, 2008, the undersigned conducted a preliminary review of the file and directed the respondent to show cause why the petition should not be granted.

On May 9, 2008, the respondent filed an Answer to the Petition, a Motion for Summary Judgment and a Memorandum in Support. Consequently, the Court issued a <u>Roseboro</u> Notice on May 13, 2008.

On June 2, 2008, the petitioner filed a Motion for Temporary Restraining Order.

On August 1, 2008, the petitioner filed a Motion to Dismiss the Respondent's Motion for Summary Judgment and a Response in Opposition to the Respondent's Motion for Summary Judgment.

On August 11, 2008, the respondent filed a reply to the petitioner's response in opposition.

This case is before the undersigned for a report and recommendation on the pending motions and the responses and replies thereto.

**B.   Petitioners' Conviction and Sentence**

In 1985, in Ohio County, West Virginia, the petitioner was sentenced to life without mercy pursuant to a conviction for first degree murder.  The petitioner also received two concurrent one to five sentences for two convictions for third degree sexual assault arising out of the same criminal case.  On October 11, 1996, the petitioner's murder conviction was set aside by the West Virginia Supreme Court of Appeals ("WVSCA").  See State v. Eugene Blake, 478 S.E.2d 550 (W.Va. 1996).

Upon remand to the Circuit Court, the petitioner entered a guilty plea to first degree murder and to an information charging him with Abduction with Intent to Defile and Assault During the Commission of a Felony.  See Resp't Ex. 1.  In the plea agreement, the defendant also agreed to waive any double jeopardy claim as to the abduction and assault charges and any right to credit for time served prior to the reversal of his original conviction and sentence.  Id.  In essence, the petitioner acknowledged that the State would otherwise be barred from prosecuting him on the abduction or assault charge without his waiver[1] and agreed to credit for time served only from the date his conviction was overturned, or October 11, 1996, effectively waiving credit for the ten years the petitioner served between the time of his original conviction and the reversal of that conviction. The petitioner's agreement to waive credit for time served prior to the reversal of his conviction was noted at least twice in the plea agreement.  Id.  Finally, the defendant waived his right to attack the

---

[1] Although they were available at the time the petitioner was indicted in 1985, the petitioner was not originally charged with these crimes.  All parties recognized that without the petitioner's waiver, those claims would be barred by the principles of double jeopardy and by the state statute of limitations. In addition, the assault charge was a lesser included offense of murder and therefore, duplicitous of the murder charge.

2

judgment of conviction either on direct appeal, collateral review or through any motion for a reduction in sentence.  Id.  In exchange for these concessions, the State made a binding agreement as to sentence.  Id.  That agreement included that the defendant be sentenced to life with mercy upon his plea of guilty to murder, making him eligible for parole on that charge after the service of ten years.  Id.  With his plea of guilty on the abduction and assault charges, the parties agreed that the petitioner would serve a minimum total term of 15 years prior to being eligible for parole.  Id.  Both parties acknowledged that parole was not guaranteed after 15 years, only that petitioner would be eligible in 15 years, not including credit for the time spent serving his original conviction prior to its reversal.  Id.  In effect then, the parties were actually agreeing to a sentence of at least 25 years.

After a plea hearing, the Circuit Court accepted the terms of the plea agreement, and on April 28, 1997, the petitioner was sentenced to life with mercy for his murder conviction, three to ten years for his abduction conviction and two to ten years for his assault conviction, all sentences to be served consecutively, with credit for time served starting October 11, 1996.  Pursuant to the terms of his plea, the petitioner did not appeal his conviction immediately following its imposition.

## C.    Petitioners' First State Habeas Corpus

On September 25, 2001, the petitioner filed his first motion for post conviction relief in state court.  Resp't Ex. 4.  In that petition, the petitioner raised the following grounds for relief:

1.  Ineffective assistance of counsel based upon a conflict of interest - that defense counsel failed to disclose his close relationship with the victim's family prior to entering into a plea negotiation in behalf of Petitioner.  It is Petitioner's argument that because the potential conflict of interest was not revealed in a timely manner, it lessens the likelihood that Petitioner received effective assistance of counsel.

2.  Petitioner was forced and coerced to double bunk with another prisoner for a period of fifteen days without the necessary running water.  Petitioners' cell smelled of urine and human feces, which caused further health problems.

3. Ineffective assistance of counsel. It is the argument of Petitioner to prohibit the enforcement of the April 3, 1997, sentencing within Ohio County because there was substantial evidence which clearly showed the case to be a self-defense case and that Petitioner did not commit the crime of abduction. But yet defense counsel entered into plea negotiations in behalf of petitioner charging him with first degree murder and abduction. Therefore, a prejudice did occur by the ineffectiveness of counsel.

4. A circuit court prosecuting attorney does not have jurisdiction to adjudge Petitioner guilty of an uncharged offense, for such would violate Petitioner's due process rights.

5. It is the argument of petitioner to the due process clause requires that one be charged with an offense before one can be adjudged guilty of that offense. The sentencing judge and the Prosecuting Attorney of Ohio County abused their discretion when they allowed Petitioner to plead guilty to which he not been originally charged or convicted of. Those offenses were abduction and assault. A court does not have jurisdiction to adjudge Petitioner guilty of an uncharged offense for such would violate Petitioner's due process right.

6. Petitioner Blake is petitioning this Court for a writ of prohibition seeking to prohibit the enforcement of an April 3, 1997, order from the Circuit Court of Ohio County. The Fifth Amendment's due process clause does not permit the prosecuting attorney to require this Petitioner to waive the right to receive credit for eleven years that he was physically incarcerated when imposing sentence for the same offense upon a retrial after his first conviction had been set aside. Credit for punishment exacted must be fully credited. Blake's constitutional rights have been violated because his sentencing order denied him proper credit for the time that he has been physically incarcerated within the West Virginia Division of Corrections. This Petitioner has been physically incarcerated since July 10, 1985. The sentencing judge was clearly wrong and abused its discretion because he was fully aware of the possible impact of the double jeopardy and equal protection clauses of the West Virginia Constitution, prior to imposing of the additional sentence.

7. Petitioner Blake is petitioning this Court for a writ of prohibition, seeking to prohibit the enforcement of April 3, 1997, sentence order from the circuit court of Ohio County. The due process clause requires that one be charged with an offense. In this case, the sentencing judge and prosecuting attorney abused their discretion when they allowed Petitioner Blake to plead guilty to several offenses with which he had not been charged, namely abduction and assault. A court does not have jurisdiction to adjudge Petitioner Blake guilty of an uncharged offense, for such would violate Blake's due process rights. Blake is petitioning this Court to remand this case to the circuit court with instructions.

8. Petitioner Blake is petitioning this Court for a writ of prohibition, seeking to prohibit the enforcement of an April 3, 1007, order from the circuit court of Ohio County because his constitutional right to the effective assistance of counsel after counsel failed to disclose his close relationship with the victim's family, prior to entering into a plea negotiation in behalf of Petitioner Blake. It is Blake's argument that because the conflict was not revealed in a

timely manner, it lessens the likelihood that Petitioner Blake received the effective assistance of counsel.  Therefore, a prejudice did occur by the ineffectiveness of counsel.

9.  It is Petitioner Blake's argument that he was denied the right to appeal his conviction of April 3, 1997, from the Circuit Court of Ohio County, at Wheeling, West Virginia, and denied his right to the effective assistance of court appointed counsel on his appeal to the state supreme court.  An indigent criminal defendant has a right to appeal his conviction and has the right under Article III, § 10, 17 of the West Virginia Constitution to the effective assistance of court-appointed counsel on his appeal.  Petitioner mailed a letter to his court appointed attorney on May 28, 1997, which requested that an intent to appeal the conviction, which is a clear and timely indication of Petitioner's desire to appeal.  It is Petitioner's legal request that he be resentenced to breathe new life into his appeal time and allow this Petitioner an opportunity to appeal his conviction to the West Virginia Supreme Court.

10.  See Petitioner's Ground for Relief pp. 22 of Exhibit 4 to Petitioner's Motion for Summary Judgment.

11.  Whether there were oppressive and coercive circumstances surrounding the guilty plea of the Petitioner on April 3, 1997.  Petitioner contends that his conviction is void in that the guilty plea upon which it was based was not made voluntarily, knowingly and intelligently.

12.  See Petitioner's Ground for Relief at pp. 10 of Exhibit 4 to Petitioner's Motion for Summary Judgment.

13.  The sentencing judge was clearly wrong and abused its discretion because he was fully aware of the possible impact of the Double Jeopardy and Equal Protection Clauses of the West Virginia Constitution, prior to imposing the sentence and could have rejected the plea agreement.  It was error for the trial court not to give such credit from July 10, 1985, until April 3, 1997, for punishment exacted at the resentencing hearing.

The petitioner's first state habeas was denied on October 31, 2001. Resp't Ex. 5.  The petitioner did not appeal that Order.

## D.  Petitioners' Second State Habeas Corpus

On June 8, 2005, the petitioner filed his second motion for post conviction relief in state court.  Resp't Ex. 6.  In his second state habeas petition, the petitioner raised the following grounds for relief:

1.  It is the argument of Petitioner Blake that the Circuit Court erred by failing to conduct an omnibus evidentiary hearing to retrospectively determine his competency before the Circuit

5

Court accepted the petitioner's April 3, 1997, guilty plea. Does Petitioner Blake have a substantive and a procedural due process right to avoid entering a plea of guilty while mentally incompetent.

2. It is the argument of Petitioner Blake that the Circuit Court erred by failing to ascertain on the record that he had made a knowing, voluntary, and intelligent waiver of his right to present a self-incriminating statement during the factual basis of the plea. The West Virginia Constitution, Article III, Section 10, provides that a criminal defendant with a level of due process protection at least equal to that provided through the Fifth and Fourteenth Amendments to the United States Constitution and may, in certain circumstances, require higher standards of protection.

3. It is the argument of Petitioner Blake that he has been denied his state constitutional right to appeal his post conviction habeas corpus denial of November 28, 2002. Further, an indigent criminal defendant who desires to appeal his post conviction denial has a right, under the State Constitution, to the effective assistance of court-appointed counsel on his appeal.

4. It is the argument of Petitioner Blake that he filed an omnibus post conviction habeas corpus petition with the lower court, pursuant to W.Va. Code § 53-4A-1. Then on November 28, 2002, an evidentiary hearing was held. Attorney William Cipriani was appointed to represent Petitioner. At the conclusion of the hearing this lower court denied the petition. It is now the argument of Petitioner Blake that the lower court has failed to draft a comprehensive order as required by W.Va. Code § 53-4A-7(c) pertaining to the facts and conclusions of law relating to each contention and ground in fact of law.

Because the petitioner had not appealed his sentencing Order to the State Supreme Court, the Circuit Court found the petitioner's second state habeas petition premature and resentenced the petitioner on September 20, 2005, to preserve his right to file a direct appeal. Resp't Ex. 7.

On July 19, 2006, the state court entered an order which consolidated several orders filed in petitioners' case. Resp't Ex. 8. Specifically, the Court consolidated a March 13, 2006 order denying petitioners' motion to withdraw his guilty pleas and amended motion to withdraw guilty pleas; its April 28, 2006 order regarding the petitioner's resentencing hearing held on September 20, 2005 and resentencing the petitioner to the same sentence for purposes of filing a timely appeal; and the Court's June 15, 2006 order denying the petitioner's motion to vacate his guilty pleas. Id.

**E.    The Petitioner's Direct Appeal**

On November 29, 2006, the petitioner filed a direct appeal of his resentencing.  Resp't Ex.

9.  The petitioner's direct appeal asserted the following assignments of error:

1.  The plea agreement is illegal because it violates the double jeopardy prohibition on being punished twice for the same offense.

2.  The plea agreement was tainted by "vindictiveness" on the part of the State.

3.  While procedural rights can be waived, substantive rights are not subject to waiver.

4.  The remedy for an illegal plea bargain is to permit the defendant to withdraw his plea and stand trial.

The WVSCA refused the petitioner's direct appeal by order dated February 15, 2007.  Id.

The petitioner filed a petition for writ of certiorari with the United States Supreme Court.

Respondent's Memorandum (dckt. 24) at 3.  Said writ was refused on May 21, 2007.  Id.  The instant

petition was filed within one-year from that date, on January 3, 2008.

**F.    Petitioners' Federal Habeas Claims**

In his federal habeas petition, the petitioner raises the following grounds for relief:

(1) He has a Constitutional right for all custody jail credit that he was physically incarcerated for the time he served under his original sentence during the pendency of the appeal, and while he was incarcerated in the West Virginia State Penitentiary.

(2)  The State of West Virginia violated the principle of double jeopardy of the Fifth Amendment by denying petitioner custody jail credit for time served on his sentence and required him to serve the same time twice.

(3) The West Virginia State Supreme Court incorrectly considered the totality of the circumstances of the plea agreement made by the State of West Virginia because it violates the Fifth Amendment of the principles of double jeopardy.  It required petitioner to waive ten (10) years of custody jail credit and serve the same time twice and altered his date of eligibility for parole.

(4) The remedy for an illegal plea bargain is to permit the defendant to withdraw and to stand trial.

(5) The plea agreement was tainted by "vindictiveness" on the part of the State.

## G.   The Respondent's Answer and Motion for Summary Judgment

In the answer, the respondent generally denies that any violation of the petitioner's rights occurred.  In addition, in his motion for summary judgment, the respondent asserts that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.  In support of his motion, the respondent asserts that the petitioner has failed to demonstrate that he is entitled to relief on any of his claims because he cannot overcome the valid waiver contained in the plea agreement nor are his claims otherwise meritorious.

## H.   The Petitioner's Motion for Temporary Restraining Order

In this motion, the petitioner asserts that on May 28, 2008, the respondent ordered two staff members to remove and disable the computers in the law library by removing the 3.5 floppy disk drives in every computer.  The petitioner further asserts that he is only able to store his legal writing documents pertaining to the instant case on a 3.5 floppy diskette.  Therefore, the petitioner asserts that he is being denied access to the courts.  More specifically, the petitioner asserts that he has pending deadlines that he will not be able to meet due to the respondent's disabling of the institution's computers.  Thus, the petitioner asserts that his case will be dismissed.

In addition, the petitioner asserts that the holding cells at the Mount Olive Correctional Center where he is currently housed, were originally designed to hold only one inmate.  However, due to overcrowding problems, the petitioner asserts that he is now being forced to double cell.

For these reasons, the petitioner seeks a restraining order against the respondent directing the respondent to reinstall the 3.5 floppy disk drives back into the institution's computers.

## I.   The Petitioner's Motion to Dismiss the Respondent's Motion

In this motion, the petitioner asserts that he is entitled to judgment as a matter of law because his case "demonstrates a compelling set of circumstances warranting a formal reassessment" of his mental capacity. However, the petitioner then asserts that this matter "is not rife for summary dismissal."

**J.    The Petitioner's Opposition to the Respondent's Motion**

In his response to the respondent's motion, the petitioner asserts that his waiver of his constitutional rights was not valid because it was not willing, voluntary, knowing or intelligent. In support of this claim, the petitioner asserts that at the time he pleaded guilty, he was mentally incompetent and that he was advised by incompetent counsel. Further, the petitioner asserts that his sentence was vindictive, that he is actually innocent of the crime for which he was convicted and that there was a violation of Rule 11(b) of the Federal Rules of Criminal Procedure during his plea hearing.

**K.    The Respondent's Reply**

In his reply, the respondent asserts that the petitioner's claims of mental incompetency, ineffective assistance of counsel and actual innocence, are unexhausted and procedurally barred and therefore, have no place in these proceedings. In addition, the respondent argues that even if it were appropriate for the petitioner to raise such claims at this time, those claims are refuted by the record or are otherwise without merit. As to the petitioner's claim of actual innocence, the respondent also argues that such claim is not cognizable in a federal habeas proceeding. As to the petitioner's Rule 11 claim, the respondent asserts that the federal rules of civil procedure have no bearing on a state court proceeding. The respondent asserts that the petitioner's plea hearing was governed by State law, not federal law, and therefore, any Rule 11 violation is a matter of state law which is not

cognizable on federal habeas review.

## II.   Standards of Review

### A.   Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases.  See Blackledge v. Allison, 431 U.S. 63, 80 (1977).  So too has the Fourth Circuit Court of Appeals.  Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991).  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party.  Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  However,  the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment.  Anderson v Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]."  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987).  Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather then encourage mere speculation.  Anderson, 477 U.S. at 248.  It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing

the motion.  <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-588 (1986).

## B.  Federal Habeas Review Under 28 U.S.C. § 2254

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Regardless, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  However, the federal court may not grant habeas relief unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion."  <u>Thomas v. Taylor</u>, 170 F.3d 466, 475 (4th Cir. 1999).  When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law.  <u>Bell v. Jarvis</u>, 236 F.3d 149 (4th Cir.), <u>cert. denied</u>, 524 U.S. 830 (2001)(quoting <u>Bacon v. Lee</u>, 225 F.3d 470, 478 (4th Cir. 2000)).  However, the court must still "confine [it's] review to whether the court's

determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently that this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A federal court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "An unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.

When a petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S. C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003).

However, habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Richmond v. Polk, 375 F.3d 309 (4th Cir. 2004). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual

prejudice.'" <u>Brecht</u>, <u>supra</u>.

## III.    <u>Analysis</u>

### A.    <u>Grounds One Through Four</u>

Although the petitioner alleges five assignments of error in his petition, the crux of his argument in grounds one through four is that his plea agreement improperly waived his double jeopardy rights and is therefore invalidated on its face and should be withdrawn.  However, the premise of the petitioner's argument is false.  There is no doubt that the petitioner can and did waive his double jeopardy rights in his plea agreement.[2]  <u>See</u> <u>United States v. Mezzanatto</u>, 513 U.S. 196, 201 (1995) (a defendant may waive any right so long as the waiver is knowing and voluntary); <u>Peretz v. United States</u>, 501 U.S. 923, 936 (1991) ("The most basic rights of criminal defendants are . . . subject to waiver."); <u>see</u> <u>also</u> <u>McMahon v. Hodges</u>, 382 F.3d 284, 290 (2d Cir. 2004) ("An accused may waive even fundamental rights if the proper safeguards are in place to ensure that the waiver is voluntary and intelligent."); <u>Commonwealth v. Byrne</u>, 833 A.2d 729, 736 (Pa. Super. 2003) (a criminal defendant may waive his double jeopardy rights).  Therefore, the petitioner's plea is not invalid on its face.  The real issue in this case is whether the petitioner's plea, and hence his waiver, was knowingly, voluntarily and intelligently made.  <u>See</u> <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970) (the waiver of a constitutional right must be knowing and voluntary); <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938) (same).  Whether the waiver of a constitutional right was knowing and voluntary is based "upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused."  <u>See</u> <u>Zerbst</u>, <u>supra</u>.

---

[2] The petitioner seemingly concedes this point in his Response in Opposition to the respondent's motion.  <u>See</u> dckt. 36.  Nowhere in that document does the petitioner challenge the respondent's contention that his double jeopardy rights cannot be waived.  <u>Id.</u>  Instead, the petitioner argues that his plea was not knowing and voluntarily made.  <u>Id.</u>

The background of the petitioner's case is as follows, the petitioner was charged in 1985 of first degree murder and two counts of third degree sexual assault. The petitioner was found guilty by a jury and sentenced to life without mercy.[3] On appeal, the petitioner's murder conviction was set aside and remanded to the Circuit Court for a new trial. Rather than risk a second jury conviction and the possibility of life without mercy again, the petitioner plead guilty to first degree murder and to an information charging him with abduction and assault. Abduction and assault were not charged in the 1985 indictment. In exchange, the petitioner made several substantial concessions. First, the petitioner agreed to waive any credit for time served as a result of his original 1985 conviction, up to the date the WVSCA set aside his conviction. Effectively, that meant the petitioner would not receive credit for approximately 10 years of incarceration on his subsequent sentence. In addition, the petitioner waived his right to make a double jeopardy challenge to the waiver of such jail credit, and to the new charges of abduction and assault. Finally, the petitioner agreed to waive his right to file an appeal or any post conviction proceedings related to his resentencing. In exchange, the State agreed to a binding sentence recommendation that included a new sentence of life with mercy, granting petitioner the possibility of one day receiving a grant of parole. In addition, the plea agreement required that the petitioner admit his crimes in open court, particularly, that he admit shooting the young teenage victim in the head with premeditation and malice. It appears that the plea agreement was beneficial to all parties in that the petitioner now had the possibility of parole eligibility, the state did not have to retry a case that was more than 10 years old, and the family of the victim received some closure from the petitioner's admissions in open court.

---

[3] There is no death penalty in West Virginia. Thus, life without mercy, meaning life in prison without the possibility of parole, is the most severe penalty that may be imposed by law.

Because of the substantial concessions the petitioner was making in the plea agreement, and its binding nature, the circuit court conducted a thorough plea hearing. In particular, the following information and exchanges were had at the plea hearing:

> Mr. Herndon:[4]    . . . Mr. Blake has been advised that with respect to proceeding by information that the State cannot proceed by information without his particular consent.
>
> And that if the State chose to attempt to proceed by information, they would be prohibited from doing so, and that no one, neither the State, the Court, nor any other person, can require Mr. Blake to proceed by information. In this particular case, because the issues surrounding procedural joinder, double jeopardy, duplicity of charges and perhaps latches and any other equitable doctrine or passage of time, it is questionable that the State would be able to proceed by either information or indictment.
>
> Mr. Blake advised me that he understands that. He's willing to consent to permitting the State to proceed by information and indictment and to waive any type of assertion that he might have that the State might not proceed by information in this case, or that the State might not proceed at all, and has consented to the proceeding by executing a written waiver of indictment.

*****

> The Court: Mr. Blake, did you sign this five-page plea agreement and notice of plea today in the presence of your attorney?
>
> The Defendant: Yes, Your Honor, I did.
>
> The Court: And have you had an opportunity to read the entire plea bargain and notice of plea?
>
> The Defendant: My attorney, Steve Herndon, has. Read it to me and explained it to me, Your Honor. Yes, sir.
>
> The Court: He read it outloud to you?
>
> The Defendant: Yes, Your Honor.

*****

> The Court: Let me just take a moment to review the contents of the plea at this time.

---

[4] Stephen D. Herndon was appointed petitioner's counsel, at the petitioner's request, after his original conviction was set aside.

Mr. Blake, before we get into your understanding of the actual terms of the plea agreement, I want to ask you a few preliminary questions.

First, do you understand that the Court does not want you to enter a guilty plea unless you are, in fact, guilty?

The Defendant: I understand that, Your Honor . . .

The Court: I have before me a plea bargain and notice of plea which I believe consists of five typewritten pages.

The first paragraph indicates that you would plead guilty to the charge of first degree murder. And subsection (a) under that says that the defendant acknowledges that he has been advised that the penalty for murder in the first degree in this 1985 case is confinement in the West Virginia Penitentiary for life with parole eligibility after ten years' (sic) incarceration. The defendant understands that there is no certainty that he will receive parole when eligible for the reason that parole is a matter of grace within the sole discretion of the Board of Parole.

Do you understand that?

The Defendant: Yes.

The Court: You have been incarcerated for these many years in the State system; is that correct?

The Defendant: Yes, Your Honor.

*****

The Court: And it goes on further to say that the defendant waives any right of procedural joinder that he might have, any assertion that double jeopardy or duplicity prevents a prosecution under said information, and that you are also waiving any assertion you may have that said prosecution is barred as being untimely.

You should understand that these are very considerable concessions that you are making at this time. That is, the State normally is required to proceed against you on all charges that stem from the same fact situation at the same time. When the State originally proceeded against you in this matter, they did not bring the two charges that were mentioned here, that is, the commission of an assault during the commission of a felony, or the crime of abduction of a child under the age of 16 years . . .

So that you understand that the State might be prevented from doing that if, in fact, you were not waiving that right at this time.

Do you understand. (sic)

The Defendant: Yes, Your Honor.

The Court: So that this is two new charges that are being brought against you for the first

time, and there is a very real chance, in fact, almost a dead certainty, that the State would not be able to proceed on those charges without your consent. Do you understand that?

The Defendant: Yes, Your Honor.

The Court: Okay.
        You also understand that you are waiving any claim that these prosecutions should be barred by double jeopardy. And, in this instance, that just means that since the State put you in jeopardy once by trying these matters to the jury, and they did not bring these other charges with you, that the Constitutional guarantee of being placed in jeopardy for the same crime could also be applied, because they did not charge you with these other crimes before. So you understand that you are also waiving that right?

The Defendant: Yes, Your Honor.

*****

The Court: Subsection (d) goes on to say that it is the intention of the parties that the defendant serve a minimum of 15 years of actual incarceration before being eligible for parole. It is further [the] intention of the parties that the defendant shall only receive credit for any time served after the reversal of his murder conviction herein by the West Virginia Supreme Court . . .
        Do you understand that?

The Defendant: Yes, Your Honor.

The Court: And you understand that this is potentially a very large concession on your part, because it would be at least theoretically possible that you could get credit for all of the time that you have served on your murder conviction, and that the time would be applied towards the sentence that would be given to you today.
        Do you understand that?

The Defendant: Yes, Your Honor.

The Court: And you understand that you are giving up the right to claim any credit for any of that time served, under this paragraph?

The Defendant: Yes.

Mr. Herndon: Your Honor, so I can be clear, the subparagraph in the next sentencing area does give him credit for time served from the time of his reversal of his conviction by the West Virginia Supreme Court to date. So when we're talking about the waiver, it's specifically described in the next subparagraph, I think, 3(a) sub (1).

The Court: That is also contained in paragraph (d) which I did read.

That goes on to say, "To that end, the defendant hereby waives any right he may receive to credit for time served on any of the sentences set out herein under the Federal Constitution, the State Constitution[,] under the common law as a matter of equity, or under any statute, including but not limited to West Virginia code 61-11-24. And that statute basically says that you are normally entitled to receive credit for all time served in jail awaiting trial and sentencing on any criminal matter.

Do you understand that you were giving up all these valuable Constitutional[,] legal and equitable rights by this agreement that you are entering into today?

The Defendant: From what my attorney explained to me, yes, Your Honor.

The Court: There is no question in your mind as a result of this plea today that you would not be eligible for parole until ten years from the date that your case was reversed by the Supreme Court; is that true?

The Defendant: Yes, Your Honor.

*****

The Court: Subsection (1) under that says, "In order to effectuate the provision of this agreement, the defendant hereby knowingly, intelligently and voluntarily waives any right that he may have to credit for time served for any period of incarceration served prior to the reversal of the original conviction of murder by the West Virginia Supreme Court. The defendant acknowledges that he has been advised and understands that he has a right to credit for time served under equitable principles by statute, common law and under the State and Federal Constitutions, and knowingly and intelligently and voluntarily waives any and all such rights." Do you understand that?

The Defendant: Yes, Your Honor.

The Court: And I've previously explained that to you. You are giving up the right to have credit for those years that you spent incarcerated in order to get the State to enter into this plea agreement and also to get this Court to agree to accept the binding plea agreement. Is that true?

The Defendant: Yes, Your Honor.

*****

The Court: Okay.

Paragraph 4 goes on to say that the defendant shall not attack the judgment of conviction as set forth hereinunder (sic) either directly or indirectly by appeal, by state or federal habeas corpus, or in any manner . . .

You understand, and I believe that you probably well understand that you have the right to attack any conviction in any sentence in any manner of ways. Paragraph 4 basically sets forth all of the legal means that you have for attacking the conviction, and, as well, the sentence that I might give, and that you are waiving those rights to do that.

Do you understand that this is the meaning of No. 4?

The Defendant. From what you have explained to me, yes, sir, Your Honor.

The Court: You understand that some of these rights are absolutely guaranteed you, and if it were not for the fact that you were willing to waive them at this time, that you would be able to attack these proceedings as well as attack the sentence that you would receive, and you understand that by waiving those rights today that you are giving them up and you may not have those rights in the future by virtue of this agreement.

The Defendant: Yes, Your Honor.

*****

Mr. Smith:[5] I would like to make one thing clear. Although I'm sure it is part of the record, but it has been referred to in the plea agreement, and that is the date of the reversal by the West Virginia Supreme Court. I think we could even stipulate to this. My records indicate that the matter was reversed by the West Virginia Supreme Court of Appeals on October 11, 196.

Mr. Herndon: We're happy to agree that that is the date for the start of the credit for time served, Your Honor.

*****

The Court: Okay. At this time, Mr. Blake, I would ask that you stand and be sworn.

(Oath Administered.)

The Court: Be seated, sir.

How far have you gone in school?

The Defendant: I don't remember, Your Honor.

The Court: Did you graduate from high school?

---

[5] Mr. Smith appeared on behalf of the Prosecuting Attorney's Office whom represented the State of West Virginia in these proceedings.

The Defendant: Yes, there was a record that I graduated from Huntington High School.

The Court: Can you read and write the English language?

The Defendant: Yes, Your Honor . . .

The Court: And have you had the opportunity -- I've already asked you this, but I will ask you again, have you read the petition to enter a guilty plea and the plea agreement, and do you understand these documents?

The Defendant: Yes, Your Honor.

The Court: Do you understand what is going on here today?

The Defendant: Yes, Your Honor.

The Court: Have you used any drugs or alcohol within the last 24 hours?

The Defendant: Other than suffering from pneumonia, at the regional jail I have penicillin tablets, and other antibiotics, but they are just from the sickness I suffered.

The Court: Because of your illness, do you feel that you are not in the proper frame of mind to enter your plea today?

The Defendant: Oh, no, I don't think so, Your Honor.

The Court: Have the antibiotics had any ill effects on you, as far as any hallucinations or any weakness?

The Defendant: Not to my knowledge. Just taking penicillin tablets and some other stuff.

The Court: Have you ever been treated for any psychological or mental conditions?

The Defendant: Not to my knowledge.

The Court: Have you ever been hospitalized for a psychological or mental condition.

The Defendant: Not to my knowledge, I haven't.

The Court: You indicated that you were taking antibiotics and some other things. Do you know what those other things are?

The Defendant: Just for the infection in my lungs, Your Honor, is all.

The Court: You are represented here today by Attorney Castelle and Attorney Herndon. Is that correct?

The Defendant: Yes, Your Honor.

The Court: And would it be fair to say that the Court pretty much permitted you to select the attorney who would represent you in this matter?

The Defendant. I would say so, yes.

The Court: And Mr. Castelle, I understand perfected your appeal that resulted in your getting a new trial; is that correct?

The Defendant: Yes, Your Honor.

The Court: And you had a good working relationship with him.

The Defendant: Yes, Your Honor.

The Court: And you specifically asked the Court to appoint Mr. Herndon to represent you; did you not?

The Defendant: Yes, I did . . .

The Court: Mr. Blake, have you had an opportunity to ask your attorneys questions concerning the crimes contained in the indictment as well as the crimes contained in the information?

The Defendant: Yes, Your Honor.

The Court: Have you had an opportunity to ask your attorney questions about possible defenses to the crimes charged against you in the indictment?

The Defendant: Yes, Your Honor.

The Court: Have you had an opportunity to ask your attorney questions concerning the petition to enter a guilty plea and the plea agreement?

The Defendant: Yes, Your Honor.

The Court: Have your attorneys answered all the questions that you have asked concerning these matters?

The Defendant: Yes, Your Honor.

The Court: And do you believe that you understand the answers that they have given you?

The Defendant: I would think so, yes.

The Court: Have you told your attorneys all of the facts surrounding the crimes charged in the indictment so that your attorneys would be in a position to make a recommendation to you as to whether or not you should go to trial or enter into the plea agreement?

The Defendant: I have fully explained it to Mr. Herndon.

The Court: Has your attorney explained to you the terms of the plea agreement?

The Defendant: Yes, he has, Your Honor.

The Court: And do you understand the terms of the agreement as explained to you by him.

The Defendant: Yes, Your Honor . . .

The Court: Are you satisfied with the services that they have each rendered to you?

The Defendant: As of this date, yes, Your Honor.

The Court: Is your willingness to plead guilty today a result of prior discussions between your attorneys and the prosecutor's office?

The Defendant: Yes, Your Honor . . .

The Court: Have there been any promises or threats made to you in order to get you to enter into this plea agreement other than the promises in the plea agreement itself?

The Defendant: No, Your Honor . . .

The Court: Has anyone forced you or threatened you in order to get you to enter into the plea agreement?

The Defendant: No, Your Honor . . .

The Court: And do you wish to continue with the plea at this time?

The Defendant.  Yes, Your Honor.

*****

The Court:  Mr. Blake would you stand, please.

(Defendant complies.)

The Court: How do you plead to the charge that on or about October 24, 1984, in Ohio County, West Virginia, that you committed the offense of murder in the first degree by the willful, deliberate, felonious and premeditated shooting of [the victim][6], with a pistol, with intent to cause her death and causing her death, in violation of West Virginia Code 61-2-1 against the peace and dignity of the State of West Virginia.

The Defendant: Yes, Your Honor.

The Court: You plead guilty to that?

The Defendant: Yes, Your Honor.

The Court: Sir, how do you plead to the information that charges that on or about the 24th day of October, 1984, in Ohio County, West Virginia, that you committed the offense of assault during the commission of the felony of abduction of a child for the purpose of concubinage or prostitution with the intent to defile by unlawfully and feloniously shooting, cutting, stabbing or wounding [the victim] during the course of the commission of the felony offense set out in Code 61-2-14(a) of abduction of a child for the purpose of concubinage or prostitution with the intent to defile by shooting [the victim] in the head while taking away [the victim], a child under the age of 16 years of age, from the person having lawful charge of her for the purpose of prostitution or concubinage with the intent to defile said [the victim] against the peace and dignity of the State of West Virginia in violation of West Virginia Code 61-2-10?
    Do you plead guilty to that charge, sir?

The Defendant: Guilty, Your Honor.

The Court: And how do you plead to the information that charges that on or about the 24th day of October 1984 in Ohio County, West Virginia, you committed the offense of abduction of a child for the purpose of concubinage or prostitution with the intent to defile by unlawfully and feloniously taking away [the victim], a child under 16 years of age [from the person ] having lawful charge of her for the purpose of prostitution or concubinage with the intent to defile the said [victim], against the peace and dignity of the State of West Virginia, and in violation of West Virginia Code 61-2-12(a)?

The Defendant: Guilty, Your Honor.

The Court: You may be seated. At this time I will make a finding that the defendant has

---

[6] Because the victim was a minor, the State case was sealed and her name has been redacted from the plea transcripts.

knowingly and intelligently and of his own freewill entered into the plea agreement in this matter and entered a plea of guilty to each of the three individual[] charges just read to him pursuant to that plea. I will adjudge him guilty of all three offenses.

I guess I should announce officially that I am going to at this time accept the plea agreement, and since it is a binding agreement, I will sentence him according to the terms . . .

*****

The Court: . . . Could you tell the Court what, in fact, happened on October 24th that would make you guilty of first degree murder, and, as well, the other two charges?

The Defendant: I shot [the victim] in the head on Wheeling Island.

The Court: Did you have sex with her just prior to shooting her?

The Defendant: Yes, Your Honor, it was supposed to be an act of prostitution. She asked me for $60 . . .

The Court: . . . [D]id you take her from the area of her home and buy her alcohol?

The Defendant: Yes, Your Honor.

The Court: And did you return her to her home again?

The Defendant: Yes.

The Court: And then did you pick her up again?

The Defendant: Yes, Your Honor.

The Court: And when you picked her up the last time, was it for the purpose of having sex with her?

The Defendant: That was the agreement, yes, Your Honor, for $60.

The Court: And why did you shoot her?

The Defendant: Your Honor, I can't answer that question. I don't know. I can't give a factual -- I don't know.

The Court: Were you involved in a violent struggle with her?

The Defendant: I guess we was struggling over the weapon, yes.

The Court: And why did you have the weapon? Why would you be struggling with her?

The Defendant. The weapon was just -- I just kept it for protection . . .

The Court: Why would you be struggling with the gun with her?

The Defendant: She wanted me to pay more money, and I don't know what else to tell you, Your Honor.

The Court: Did you shoot her because she wanted more money?

The Defendant: Yes, Your Honor.

The Court: She wasn't threatening your life in any manner?

The Defendant: I don't guess so, Your Honor.

*****

See Resp't Ex. 10 (Plea Transcripts).

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. A guilty plea must be a voluntary and intelligent decision of the defendant. Boykin v. Alabama, 395 U.S. 238, 242 (1969); North Carolina v. Alford, 400 U.S. 25, 31 (1970). If the defendant does not understand his constitutional protections and the charges made against him, the guilty plea is invalid. Henderson v. Morgan, 426 U.S. 637, 645 (1976). "[A] valid plea of guilty requires that the defendant be made aware of all 'the direct consequences of his plea,'" Cuthrell v. Director, Patuxent Inst., 475 F.2d 1364, 1365 (4th Cir.), cert. denied, 414 U.S. 1005 (1973) (quoting Wade v. Coiner, 468 F.2d 1059, 1060 (4th Cir.1972)).

A defendant's statement that his plea is voluntary and knowing is generally considered

conclusive on these issues. <u>Savino v. Murray</u>, 82 F.3d 593, 603 (4th Cir. 1996). "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." <u>Fields v. Attorney Gen. of Maryland</u>, 956 F.2d 1290, 1299 (4th Cir. 1992), <u>cert. denied</u>, 506 U.S. 885 (1992). A defendant's statements at the plea hearing are "strong evidence" of the voluntariness of the plea agreement, <u>United States v. DeFusco</u>, 949 F.2d 114, 119 (4th Cir. 1991), <u>cert. denied</u>, 503 U.S. 997 (1992), and "findings by a sentencing court in accepting a plea 'constitute a formidable barrier' to attacking the plea. <u>United States v. Lambey</u>, 949 F. 2d 133, 137 (4th Cir. 1991) (quoting <u>Blackledge v. Allison</u>, 431 U.S. at 73-74).

Moreover, "[i]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated–'permit[ting] quick disposition of baseless collateral attacks.'" <u>United States v. LeMaster</u>, 403 F.3d 216, 222 (4th Cir. 2005) (quoting <u>Blackledge v. Allison</u>, 431 U.S. at 79, n. 19).

In this case, the Circuit Court went to great lengths to insure that the petitioner understood the terms and conditions of his plea agreement and the consequences flowing therefrom. Of particular importance in this case, the State Court recognized on several occasions the petitioner was agreeing to waive several important constitutional, statutory, common law and other equitable rights. The Court thoroughly reviewed the various rights the petitioner was waiving, and in each instance, garnered the petitioner's confirmation that he understood the rights he was giving up by pleading guilty. In addition, the Court, and the parties, specifically noted that by pleading guilty, the petitioner was giving up his double jeopardy rights as it pertained to the issue of credit for time served and the

government's ability to bring charges that were not a part of his original criminal prosecution. In each instance the petitioner again stated that he understood and accepted the terms of the plea agreement, and in particular, that the understood and accepted that he was waiving the claims that he has now raised on federal habeas review.

In his response in opposition to the respondent's summary judgment motion, the petitioner argues that his plea was not knowing and voluntary because at the time he pleaded guilty, he was mentally incompetent and that he was advised by incompetent counsel. However, those claims are refuted by the record as fully laid out in this Opinion. The petitioner's sworn statements at his plea hearing are therefore conclusive on these issues and he has provided no evidence to demonstrate that he should not be bound by those statements.[7] Moreover, at the time of the petitioner's plea, the State Court found that the petitioner had "knowingly and intelligently and of his own freewill" entered into the plea agreement. Resp't Ex. 10 (plea transcripts) at 62-63. The petitioner has provided no evidence to overcome those findings. For those same reasons, the petitioner's claim of actual innocence are also without merit.[8]

On state habeas review of grounds one through four, the state habeas court found that the

---

[7] In his reply in opposition to the respondent's motion, the petitioner urges the Court to examine his conduct on the day of his plea, and in particular, his responses to the questions asked by the Court. The petitioner asserts that a review of the plea transcripts will show that he was confused and incoherent and did not understand the plea proceedings. However, the undersigned has conducted a thorough review of the plea transcripts and finds just the opposite is true. The plea transcripts show that the petitioner was alert and coherent. The petitioner was able to follow the court's dialogue and answer the courts questions in an appropriate manner. The petitioner was not confused. To the contrary, the transcripts show that the petitioner understood exactly what he was doing by pleading guilty.

[8] As noted by the respondent in his reply to the petitioner's response, claims of actual innocence based on newly discovered evidence are generally not available on federal habeas review absent the showing of a violation of an independent constitutional right in the underlying state proceeding. Reply (dckt. 37) at 19 (quoting Herrera v. Collins, 506 U.S. 390, 400 (1993)). Even if it were, the petitioner, under oath, admitted his guilt to the charges.

petitioner was bound by his knowing and intelligent waiver and that his claims were otherwise without merit. Upon an independent review of the record, the undersigned finds that the state court's adjudication of grounds one through four of the instant petition was not contrary to clearly established federal law. Additionally, in light of the evidence presented in the state court proceedings, and for the reasons presented above, the undersigned does not believe that the state court's adjudication of the petitioner's claims involved an unreasonable application of clearly established federal law, nor do the state court's findings result in a decision that is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[9]

## B.  Ground Five - Vindictiveness

Although this ground is also barred by the petitioner's valid waiver of his right to appeal or otherwise collaterally attack his conviction and sentence, the undersigned also notes that this claim is without merit. In the petition, the petitioner asserts that the State acted with vindictiveness in his post appeal proceedings. Specifically, the petitioner asserts that the sentence imposed and the additional charges brought by the State were in retaliation for his successful appeal.

---

[9] To the extent that the petitioner asserts that the state court violated the provisions of Fed.R.Civ.P. 11 during the plea, as noted by the respondents, see Resp't Reply (dckt. 37) at 37, such rules are not applicable to state court proceedings. Moreover, to the extent that the petitioner makes the same or a similar challenge under Rule 11 of the West Virginia Rules of Criminal Proceedings, such a claim is a matter of State law that is not cognizable on federal habeas review. See 28 U.S.C. § 2254(a) ("a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States")(emphasis added); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (it is not the province of a federal habeas court to "reexamine state-court determinations on state-law questions"); Weeks v. Angelone, 176 F.3d 249, 262 (4th Cir. 1999) (questions of state laws and statutes are not cognizable on federal habeas review). Likewise, to the extent that the petitioner argues that he had a statutory right to credit for time served under West Virginia law, that also is a matter of State law that is not cognizable on federal habeas review. See id.

"Due process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such retaliatory motivation on the part of the sentencing judge." North Carolina v. Pearce, 395 U.S. 711, 725 (1969) (finding that guarantee against multiple punishments for the same offense requires that punishment already exacted be fully credited in imposing conviction for same offense). Therefore, a sentence may not be increased upon reconviction at a second trial after the first conviction has been overturned on appeal, unless the increase is justified by events occurring after the first trial. Id. at 726. "Otherwise, a presumption arises that a greater sentence has been imposed for a vindictive purpose . . ." Alabama v. Smith, 490 U.S. 794, 798-99 (1989).

The petitioner's claim of vindictiveness fails for two reasons. First, the petitioner did not receive a greater sentence at his second trial than at his first. The petitioner's first trial resulted in a sentence of life without mercy. Thus, the petitioner would have lived the remainder of his life in prison. His second sentence, however, provides for the possibility of parole, and the failure to credit the petitioner with time served prior to his first conviction being overturned, only changes the length of time the petitioner actually serves before becoming parole eligible.

Second, the fact that the petitioner was sentenced for two crimes not charged in the original case against him was a result of his own actions. In Blackledge v. Perry, 417 U.S. 21, 27-29 (1974), the Supreme Court found that vindictiveness may be presumed where additional charges are brought after a successful appeal. However, that presumption may be rebutted by information in the record

which justifies the charges. <u>United States v. Goodwin</u>, 457 U.S. 368, 374 (1982). Nonetheless, the petitioner in this case not only knowingly and voluntarily consented to the additional charges, but also waived any right to challenge those charges in future proceedings. The plea agreement, and the record of the plea colloquy, clearly establish that the additional charges were utilized to fashion a sentence acceptable to both parties. The additional charges insured that the petitioner would serve a minimum of 15 years in prison prior to being parole eligible. Again, considering that the petitioner received a life sentence with the possibility of parole as result of that bargain, a very favorable result given his original sentence, given the circumstances, he cannot establish that the additional charges were vindictive.

## IV. <u>Recommendation</u>

For the reasons set forth in this Opinion, it is recommendation of the undersigned that the respondent's Motion for Summary Judgment (dckt. 23) be **GRANTED**, the petitioner's Motion to Dismiss the Respondent's Motion for Summary Judgment (dckt. 35) be **DENIED** and that the petitioner's § 2254 petition be **DENIED** and **DISMISSED with prejudice.** Furthermore, the undersigned recommends that the petitioner's Motion for Temporary Restraining Order (dckt. 31) be **DENIED**.[10]

---

[10] The standard for granting injunctive relief in this Court is the balancing-of-hardship analysis set forth in <u>Blackwelder Furniture Co. v. Seilig Mfg. Co.</u>, 550 F.2d 189 (4th Cir. 1977). In making this analysis, the Court must consider the following four factors:

    (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,
    (2) the likelihood of harm to the defendant if the requested relief is granted,
    (3) the likelihood that the plaintiff will succeed on the merits, and
    (4) the public interest.

<u>Direx Israel, Ltd v. Breakthrough Medical Corp.</u>, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). The "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." <u>Id.</u> (citation omitted).

    A court will not grant a preliminary injunction unless the plaintiff first makes a "clear showing"

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: October 8, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

---

that he will suffer irreparable injury without it. Id. The required harm "must be neither remote nor speculative, but actual and imminent." Id. (citations and internal quotation omitted). If such harm is demonstrated, the court must balance the likelihood of harm to the plaintiff if an injunction is not granted and the likelihood of harm to the defendant if it is granted. Id. (citation omitted). If the balance of those two factors "'tips decidedly' in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991) (citations omitted). However, "[a]s the balance tips away from the plaintiff, a stronger showing on the merits is required." Id. (citation omitted).

In this case, the plaintiff's claim of harm has not come to fruition. The disabling of the prison computers did not cause the petitioner to miss any deadlines in this case and his case was not dismissed on those grounds. Instead, the record shows that whenever the petitioner alleged a need for additional time to meet any deadline, the Court granted such time as was necessary for the petitioner to fully and appropriately prosecute this case. As to the claims of overcrowding, the petitioner requests no specific relief with regard to that claim, nor has he alleged any specific harm resulting therefrom.